OPINION. TueneR, Judge: The petitioner rests its case on the proposition that its excess profits taxes for the years in question, computed without the benefit of section 722 of the Internal Revenue Code, were excessive, because it changed the character of its business within the purview of subsection (b) (4) of section 722,[2] and by reason thereof, its average base period net income was an inadequate standard of normal earnings for the base period. In the petitions herein, claim was also made that due to the circumstances attendant upon the advent of Federal regulation of interstate motor freight operations which required, among other things, the publication by operators of their rates, the motor freight industry was depressed during the base period due to a temporary economic event unusual in the industry, and by reason thereof, petitioner was entitled to relief under subsection (b) (2) of section 722. This latter claim was not pressed at the trial and has been abandoned. The provisions of subsection (b) (4), relied on, are to the effect that the tax computed without the benefit of section 722 shall be considered to be excessive and discriminatory if the taxpayer’s average base period net income is an inadequate standard of normal earnings because “the taxpayer, either during or immediately prior to the base period, * * * changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business.” It is provided that the term “change in the character of the business” includes several specified changes or differences, among which are (1) “a change in the operation or management of the business,” (2) “a difference in the products or services furnished,” and (3) “a difference in the capacity for production or operation.” In the last sentence of the subsection, provision is made that “Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31,1939, as a result of a course of action to which the taxpayer was committed prior to January 1,1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business.” The petitioner makes no claim that the changes upon which it relies to bring it within subsection (b) (4) were made and concluded either during or immediately prior to the base period. But rather, its allegation is that it “was committed to a course of action during the base period which was consummated during a taxable year and after December 31,1939, as a result of which there was a change in the operation of the business.” And while there is no allegation that there was any change in petitioner’s “capacity for production or operation,” it is nevertheless argued that a “plan” for “a change in the operation of the business” having been formulated in the base period and consummated after December 31,1939, the change was such that by reason of the last sentence of subsection (b) (4), the change must be deemed to have been a change on December 31,1939. We agree with the respondent that “capacity” is the dominating word both in the expression “a difference in the capacity for production or operation” and in the concluding sentence of subsection (b) (4) that “Any change in the capacity for production or operation” to which a taxpayer was committed in the base period and which was consummated after the base period, is to be deemed a change in the character of the business on December 31,1939, and that the said provisions may not, within reason, be construed, in so far as they relate to operation, as if they read “difference in [for] operation” and “any change in [for] operation.” The contention of the petitioner, if allowed, would in our opinion result in a strained, rather than a plain and obvious, construction of the provisions in question. If such had been the intention of Congress, we do not believe it would have coupled a change “in operation” with a change “in management” in the first category of events declared to be included in its general and comprehensive category of “change in the character of the business.” Furthermore, we do not believe that Congress would have lifted for use in the last sentence of subsection (b) (4) the full and unchanged phraseology “capacity for production or operation” if with respect to operation it had intended the provision to read “change in operation.” Such a reading of the phrase when referring to operation would not only ignore the presence and impact of the word “capacity,” but also would change the w;ord “for” used by Congress to the word “in.” Accordingly, it is our conclusion that petitioner, as a basis for its claim under subsection (b) (4), is limited to the change or changes “in the operation” of its business which actually occurred during or immediately prior to the base period. See and compare East Texas Motor Freight Lines, 7 T. C. 579, where the taxpayer did change its “capacity * * * for operation” by the acquisition of new and additional routes. Furthermore, if the petitioner is to prevail, it must appear that the change or changes in operations which did occur in or immediately prior to the base period were substantial, and not changes which would occur in normal and ordinary course. Avey Drilling Machinery Co., 16 T. C. 1281; Suburban Transportation System, 14 T. C. 823; Stonhard Co., 13 T. C. 790; and Lamar Creamery Co., 8 T. C. 928. The changes upon which petitioner puts chief reliance were changes primarily designed to effect operating economies and, if we understand them correctly, were the stressing and soliciting of larger and heavier shipments, as contrasted with small shipments, and the devising of more economical methods of performing the necessary pickup and delivery service, particularly with respect to the smaller shipments; the replacement to some degree of straight trucks with tractor-trailers; and the elimination of one of its Newburgh terminals, with an attendant reduction in its staff of employees. The elimination of one of the Newburgh terminals and the reduction in the number of employees did not take place until after the base period, and under our application of the statute, as above construed, was not a change in the character of petitioner’s business, “either during or immediately prior to the base period,” as must have been the case if subsection (b) (4) is to apply. Claussner Hosiery Co., 16 T. C. 1335. The question remaining then is whether the things done during the base period in the solicitation of larger shipments, as contrasted with small shipments, the steps taken to effect economies in the pickup and delivery service, the acquisition of four additional tractors and three additional trailers, and the training or the beginning of the training of seven or eight additional tractor-trailer drivers were “changes in the operation” of petitioner’s business of the character and magnitude contemplated by the said subsection. In our opinion, they were not. The increased use' of tractor-trailers, according to the evidence and as we have found the fact to be, was a normal development in the operation of a motor freight business such as that in which the petitioner was engaged. We have already held in Suburban Transportation System, supra, that “The mere addition of new and improved equipment to replace that in use or to meet expanding business is not a change such as contemplated by section 722 (b) (4).” Furthermore, the effecting of economies such as those instituted and carried out during the base period in connection with the handling of the smaller shipments, the stressing and soliciting of the more profitable larger shipments, the effecting of economies in and a more efficient handling of pickups and deliveries would, in our opinion, be a perfectly normal occurrence in the operation of any such business if reasonably well run. And the evidence is that petitioner’s, business was well run. We find nothing in the statute, its legislative history, or the regulations promulgated thereunder, which supplies a basis for any conclusion that Congress had in mind such a normal change or development in its enactment of said subsection (b) (4). It is true, as shown by the record, that percentage-wise the changes effected, including those after the close of the base period, did result in a substantial increase in petitioner’s net profits which, if that should be a proper test, might be regarded as indicating that the changes in petitioner’s business were substantial, and, being substantial, were such as to fall within the purview of the changes covered by subsection (b) (4). If, however, the applicability of the statute be examined from that angle, it seems perfectly clear that on the basis of actual experience the increased profits were in greater part traceable to the elimination of the second Newburgh terminal in 1940 and the accompanying reduction in petitioner’s staff of employees. As petitioner has suggested in its proposed findings of fact, 1941 was regarded as the first full year of operation reflecting the results of the changes in operation contemplated under the “plan” formulated in 1939. The record shows, and we have found as a fact, that tonnage-wise the freight handled during the base period was normal. The record also shows, and the petitioner admits, that petitioner’s operations, so far as freight hauled and operating revenues therefrom were concerned, were comparable for the years 1939,1940, and 1941, and while it is true, as shown by the annual reports made by petitioner to the Interstate Commerce Commission for the years 1939,1940, and 1941, that the net operating revenues increased from $4,063 in 1939, to $5,370.86 in 1940 and $18,613.44 in 1941, the breakdown of the item Operation and Maintenance Expenses indicates that this increase resulted substantially from the elimination of the second Newburgh terminal and the attendant reduction in personnel, and that the ratio of reduction in transportation costs-was substantially less. Furthermore, there is no way of knowing just how much of the economies eventually effected which bore directly on transportation costs occurred in the base period, since the annual reports referred to show an increase for 1940 over 1939, rather than a reduction or saving. Accordingly, it is our conclusion that petitioner’s claims for relief under section 722 (b) (4), sufra, were not well taken and must be rejected. Reviewed by the Special Division. With resfect to the claims for relief, decisions will be entered for the respondent. As to the deficiencies, decisions will be entered wider Ride 50. SEC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. [[Image here]] (b) Taxpayers Using Average Earnings Method. — The tax computed under this subsection (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because— ******* (4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character "of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier. time. For the purpose of this subparagraph, the term “change in the character of the business” includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all of part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, or substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business ; * * * 17 T. C.