LeDanois Land & Stone Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 27757.   Filed February 21, 1957.

*Fred S. Weis, Esq.*, for the petitioner.
*Douglas M. Moore, Esq.*, for the respondent.

OPINION.

BRUCE, *Judge:* Petitioner bases its claims for relief primarily under section 722 (b) (4), its contention being that during the base period it changed the character of its business in that it was no longer leasing its property for production of limestone but had leased it for the

production of oil and gas and that this constituted a change in its capacity for production and operation of the business. It further contends that prior to January 1, 1940, it had committed itself to a course of action, consummated subsequent thereto, which resulted in a change in the capacity for production or operation of the business.

Section 722 (b) (4) provides that the excess profits tax computed without the benefit of section 722, shall be considered excessive and discriminatory, in the case of a taxpayer entitled to use the excess profits credit based on income, if its average base period net income is an inadequate standard of normal earnings because the taxpayer, during the base period, changed the character of its business and the average base period net income does not reflect the normal operation for the entire base period of the business. It defines "change in the character of the business" to include a change in the operation of the business, a difference in the products or services furnished, and a difference in the capacity for production or operation. It further provides that "any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business." It is conceded that petitioner is entitled to use the excess profits credit based on income.

In order, however, for a taxpayer to be entitled to relief under section 722 (b) (4) because of a change in operation, a difference in products, or a difference in capacity for production or operation, it must demonstrate that the nature of the operations is essentially different after the change from the nature of the operations prior to the change, that the change is substantial, of a permanent or lasting nature, and that there is a higher level of earnings which is directly attributable to the change. Bulletin on Section 722, part V, subpart I (C); Regs. 112, sec. 35.722–3 (*d*); *Bergstrom Paper Co.*, 26 T. C. 1167; *Charis Corporation*, 22 T. C. 191; *Central Produce Co.*, 18 T. C. 267; *Farmers Creamery Co. of Fredericksburg, Va.*, 18 T. C. 241; *National Grinding Wheel Co.*, 8 T. C. 1278. As stated in *Avey Drilling Machine Co.*, 16 T. C. 1281, 1298, "A change in character, within the intent of the statute, must be a substantial departure from the preexisting nature of the business."

The difficulty with petitioner's contention is that it does not meet any of the tests mentioned above. Ever since its organization in 1907, petitioner has attempted to lease its lands for the extraction of minerals. In 1917 it leased its property for oil development; in 1925 it tried to interest others in the development of its salt deposits; in 1932, it leased part of its property for limestone extractions; in 1937 it again leased its property for oil development; and in 1941 it leased it

for oil development. Petitioner has at no time attempted to develop the mineral resources of its property itself. Thus, it appears that from the time it acquired the lands in 1907, the character of petitioner's business has been that of exploiting all the mineral resources of such property, including limestone, salt, and other minerals, as well as oil, gas, and distillates, by leasing the property to others. In each of the leases executed by it, petitioner consistently reserved the right to lease the property for the development of mineral resources other than those specifically covered by the particular lease.

In view of its previous activities, it is clear that when petitioner leased its property to Frank B. Thomas in 1937 for the exclusive right to develop oil, gas, and distillate, it did not effect any substantial change in the preexisting nature of its business. Moreover, no increase in its normal level of earnings resulted from such lease or the drilling of the 2 unproductive wells in 1937 and 1938. In fact petitioner received no income whatever from this lease and the drilling thereunder. If anything, the drilling of the unproductive wells had an adverse effect on petitioner's business by casting a cloud upon the prospects of finding oil on its lands.

Nor did petitioner's attempts, during the base period, to induce other parties to drill a deep test well on its lands constitute a commitment within the meaning of section 722 (b) (4). Mere discussions, inquiries, and negotiations are not sufficient to establish a commitment to increase the capacity of the business. *Central Produce Co., supra; Continental Folding Paper Box Co.*, 17 T. C. 984. Something more than hope, desire, and expectation are required to constitute a commitment under the statute. *Robinson Terminal Warehouse Corporation*, 19 T. C. 1185.

During the base period, subsequent to the cancellation of the 1937 lease, petitioner made no change of position toward effecting an oil and gas lease on its lands. It merely tried to induce others to assume such risks. As of December 31, 1939, it had no agreement with, or offer by, anyone else to drill for oil or gas, nor was it obligated to anyone else to cause such drilling to be done. Not until 1941, some 18 months after the end of the base period and after a deep well had been brought in on nearby lands, was petitioner able again to lease its property for oil and gas development.

Accordingly we hold that petitioner did not change the character of its business during or immediately prior to the base period, nor was it committed, prior to January 1, 1940, to a course of action consummated subsequent thereto which resulted in any change in its capacity for production or operation, so as to qualify for relief from excess profits tax under section 722 (b) (4) of the Internal Revenue Code of 1939.

Next to be considered is petitioner's contention that it is qualified for relief under section 722 (b) (5), the provisions of which permit qualification on the existence "of any other factor affecting the taxpayer's business," which results in an inadequate standard of base period earnings, and in the absence of inconsistency with the principles underlying subsection (b) and with the conditions and limitations enumerated in that subsection. In *Clermont Groves, Inc.*, 17 T. C. 1616, it was held that the phrase "any other factor" in subparagraph (5) means a factor other than those enumerated in subparagraphs (1) to (4). See also Bulletin on Section 722, part VI; Regs. 112, sec. 35.722–3 (*e*). In the instant case, petitioner's claim for relief under section 722 (b) (5) is not based on "any other factor" than those to which subsection (b) (4) is directed and must therefore be denied. *Crane Co. of Minnesota*, 25 T. C. 727, 758; *Pratt & Letchworth Co.*, 21 T. C. 999, 1007; *Granite Construction Co.*, 19 T. C. 163, 173.

Finally, while our conclusion that petitioner has not shown it qualifies for relief under section 722 (b) makes unnecessary any consideration as to the computation of a constructive average base period net income, it may be pointed out that the record herein contains no facts upon the basis of which a constructive average base period net income could be determined. Hence petitioner has not established that the average base period net income allowed by the respondent under the provisions of section 713 (e) is an inadequate standard of normal earnings.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*