CLERMONT GROVES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28014.   Promulgated March 28, 1952.

*R. F. Maguire, Esq.*, for the petitioner.
*William J. Stetter, Esq.*, for the respondent.

1618

**OPINION.**

ARUNDELL, *Judge:* The claims in this proceeding are for relief from excess profits tax for the fiscal years ended May 31, 1941, 1943, and 1944. Fiscal years ended May 31, 1942, 1945, and 1946 are also involved because of various claimed unused constructive excess profits credit carry-overs and carry-backs.

The principal ground upon which relief is claimed is that by its acquisition of a citrus grove in 1932 it was committed to a course of action which was consummated in the excess profits tax years and which, with continued ownership and care of the trees, constituted a difference in the petitioner's capacity for production or operation. The claim thus made is founded on the provisions of Internal Revenue Code section 722 (b) (4). That section provides for relief if average base period net income is an inadequate standard of normal earnings because:

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business * * · *. For the purposes of this subparagraph, the term "change in the character of the business" includes * * * a difference in the capacity for production or operation * * *. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business * * *.

Even though we assume that the petitioner has established several debatable points that arise under the above provisions, we conclude that the facts do not establish a change in the character of the business which would bring the petitioner within the provisions of subparagraph (4) of section 722 (b). We can assume that the acquisition of the citrus grove in 1932 was an act that occurred "immediately prior to the base period." [1] We can also assume, without deciding, that the petitioner's purchase of the citrus grove, with knowledge that the trees would require continuous care and cultivation in order to produce increased quantities of fruit, constituted a commitment to a course of action within the meaning of section 722 (b) (4). [2]

There are, however, several specifications in the provisions of section 722 (b) (4) that the petitioner fails to meet. One is that the taxpayer "changed the character of the business." We have recognized that the statute does not completely define what is meant by a change in the character of a business. *Wisconsin Farmer Co.*, 14 T. C. 1021, 1029. In that case we accepted the general principles set out in section 35.722–3 (d) of Regulations 112, reading in part:

A change in the character of the business for the purposes of section 722 (b) (4) must be substantial in that the nature of the operations of the business affected by the change is regarded as being essentially different after the change from the nature of such operations prior to the change. No change which businesses in general are accustomed to make in the course of usual or routine operations shall be considered a change in the character of the business for the purposes of section 722 (b) (4).

Somewhat the same thought was expressed in the case of *Stonhard Co.*, 13 T. C. 790, where the taxpayer sought relief based on the introduction of three new products into a line of building maintenance materials. In denying relief, we said, in part:

---

[1] Section 35.722–3 (d) of Regulations 112 states that no arbitrary temporal limitations can be provided to circumscribe the concept of "immediately prior to the base period * * *." But see *Monarch Cap Screw & Mfg. Co.*, 5 T. C. 1220, where, at p. 1231, we held that a claimed change in business character that occurred in 1934 was "not during or immediately prior to the base period." See also *Acme Breweries*, 14 T. C. 1034, at p. 1055, where it was held that a change in products in 1933 was not immediately prior to the base period.

[2] "* * * commitments made need not take the form of legally binding contracts only." Senate Finance Committee Rept. No. 1631, 77th Cong., 2d sess., 1942–2 C. B. 504, 652. See also E. P. C. 33, 1948–2 C. B. 103, which states that "the reaching of the productive stage by an orchard is recognized as the consummation of a prior commitment for the purposes of section 722."

These 3 new products fitted into the general line of products being sold by the petitioner. They were not a departure from and did not represent any change in the character of the business carried on by the petitioner. * * * The business was the same after their introduction as before. * * * Congress, in enacting section 722 (b) (4), contemplated a greater change than that shown in the present record by the introduction of these three products.

In the case of *Avey Drilling Machine Co.*, 16 T. C. 1281, the taxpayer was a manufacturer of precision drilling machines. In and prior to the base period, it conducted extensive experiments which resulted in the improvement of its machines and the development of some new types of drilling machines. It claimed relief under section 722 (b) (4) on the ground of a difference in products which amounted to a change in the character of its business. We denied relief and, in so doing, said:

Avey, and other members of the machine tool industry, found it necessary to survival in business to do research and development to keep up with the demands of their customers and the improved products of their competitors. * * * The changes, we think, cannot be characterized as more than improvements. Avey was in the business of building precision drilling machines used to drill small holes in metal. The new machines served the same purpose as the old and, generally, were sold to customers in the same industries as before. A change in character, within the intent of the statute, must be a substantial departure from the preexisting nature of the business.

Applying the holdings of the above cases to the case before us, it is our conclusion that the petitioner has not established any departure from its normal and routine business which can justly be said to amount to a change in the character of the business conducted by it. The parties have stipulated that when the petitioner acquired its grove in 1932 it understood and knew that the trees would require continuous care and cultivation in order that they would produce increased yields of fruit. Thus, any increase in fruit yield in the taxable years that resulted from care and cultivation resulted from the conduct by the petitioner of its normal and routine business activities, rather than from any change in the character of the business. It is also agreed by the parties that cultivation, pruning, spraying, dusting, and fertilizing are necessary and are parts of a continuing program. Such a program, consisting of numerous activities, was necessary to the survival of the petitioner's business rather than for the purpose of creating a change in its character. See *Avey Drilling Machine Co., supra.*

The specific part of section 722 (b) (4) to which the petitioner ties its case is that of a "change in the capacity for production * * * consummated" during its excess profits tax years. Considering the evidence as to the age of the petitioner's trees, the care given to them, and the normal pattern of production, we find it impossible to say that a change in the productive capacity in the petitioner's trees was con-

summated in the excess profits tax years. The orange trees were 10 years old when acquired by the petitioner, 14 years old at the beginning of the base period, and 23 years at the end of the excess profits tax years. The grapefruit trees were 12 years old when acquired, and of course two years older than the orange trees at each of the other times mentioned. The stipulated facts show a normal pattern of increase in production of Florida citrus over many more years than are represented by the period of time in this case. By ages in 10-year periods, the normal increase in boxes of fruit per 100 trees is shown to be as follows:

| Age of trees | Oranges | Grape-fruit |
|---|---|---|
| 3–12 | 151 | 208 |
| 13–22 | 108 | 205 |
| 23–32 | 67 | 88 |

If consummation of capacity for production is represented by an increase in production, then it would occur long after the excess profits tax years when the petitioner's trees would be expected to continue to show an annual increase. If the consummation has relation to the period when the greatest increase occurs, that in the petitioner's case would have been prior to the base period.

The respondent takes the position that in the case of fruit the course of action is consummated when the grove reaches the production stage and that occurs in the year in which the orchard reaches an income-producing state. E. P. C. 33, 1948–2 C. B. 103. In that ruling, further views are expressed as follows:

Any increase in productive capacity arising out of natural growth of the trees after the productive stage has been reached cannot be regarded as the consummation of a commitment. Natural growth is inherent in the trees themselves and is not the result of action of the owner, other than usual maintenance required for that type of property. Congress manifestly did not intend to include in section 722 a natural phenomenon common to all growing things as an abnormality or a change in the character of a business. In the citrus fruit industry today there are relatively few groves in the United States which have reached their maximum productive capacity.

We think that E. P. C. 33 is on sound ground. Otherwise, an owner of orange trees, which normally show increased production for at least 45 years, would be justified in claiming any year in that period as marking the consummation of a change in capacity. Something more tangible than this is required as a basis for relief.

Another aspect of the case requires a decision adverse to the petitioner's claim. The initial qualifying factor contained in section 722 (b) (4) is that "the taxpayer * * * changed the character of the business." The parties have stipulated in this proceeding that the proper care of citrus trees results in natural growth, and as the trees grow their bearing surface is enlarged and their productive

capacity is increased. Thus, as there is a change in the capacity for production consequent upon the increased age of the trees, it cannot be said that the taxpayer changed the character of the business. Natural growth and the concomitant increase in bearing surface must be recognized as attributable in at least some degree to sources other than the temporal owner's ministrations to the needs of the trees. E. P. C. 33.

For the foregoing reasons, we conclude that the petitioner has not established that it changed the character of its business within the meaning of Code section 722 (b) (4).

Alternatively, the petitioner invokes subparagraph (5) of section 722 (b) to provide relief. The provisions thereof permit qualification for relief premised on the existence "of any other factor affecting the taxpayer's business" which results in an inadequate standard of base period earnings, and in the absence of inconsistency with the principles underlying subsection (b) and with the conditions and limitations enumerated in that subsection.

The phrase "any other factor" in subparagraph (5), as we read it, means a factor other than those enumerated in subparagraphs (1) to (4). The evidence claimed to support qualification under (5) is the evidence under (4). That is, it is the evidence as to increased production attendant upon the age of trees given proper care. To hold that such evidence establishes eligibility for relief under (5) would be inconsistent with the principles underlying (4) as we have set them out above, and would violate the provisions of (5). See *George Kemp Real Estate Co.*, 12 T. C. 943, appeal dismissed 182 F. 2d 847; *Roy Campbell, Wise & Wright, Inc.*, 15 T. C. 894.

The petitioner, upon an analysis of the provisions of section 722, expresses the view that in order to qualify under (5) a citrus producing corporation needs only to show that base period income is an inadequate standard of earnings to be used in determining what constitutes excess profits. This view is not in accordance with the pattern of section 722 (b). Section 722 (b) provides that the tax is to be considered to be excessive and discriminatory if base period income is "an inadequate standard of normal earnings because—" and then proceeds with the listing of the details of the provisions of subparagraphs (1) to (5). This arrangement of the statute requires the establishment of a factor or factors which cause the base period income to be an inadequate standard. Absent the establishment of such a factor, the claimant does not qualify for relief under section 722 (b).

The record in this proceeding contains stipulated facts upon which the petitioner has made computations designed to show a constructive average base period net income. We have not included such facts in

our findings because of our conclusion that the petitioner has not shown that it qualifies for relief under the requirements of section 722 (b).

Reviewed by the Special Division.

*Decision will be entered for the respondent.*