A. B. FRANK COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22258.    Promulgated November 7, 1952.

*Scott P. Crampton, Esq.*, and *Reagan Houston III, Esq.*, for the petitioner.

*Allen T. Akin, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The petitioner seeks relief from excess profits tax under section 722, Internal Revenue Code.[1] The petitioner is entitled to use the excess profits credit based on income. It is petitioner's contention that the tax computed without the benefit of section 722

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that, in cases described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earning to be used as the constructive average base period net income.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

(1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer.

(2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because

results in an excessive and discriminatory tax because its average base period net income is an inadequate standard of normal earnings due to the factors stated in section 722 (b) (1), (2), and (4).

The petitioner bases its claim for relief under section 722 (b) (1), I. R. C., upon the existence of a drought in parts of Texas which were included within petitioner's trading area. The greater portion of petitioner's area was free from the drought condition and those sections affected suffered in moderate degree. Whatever the extent of the drought in the area in which the petitioner traded, the evidence does not disclose what effect the drought had upon petitioner's business. No evidence was introduced relating the drought to a diminution or interruption of petitioner's business. Under section 722 (b) (1), I. R. C., the interruption or diminution of normal production, output, or operation must result because of the occurrence of events which are unusual and peculiar in the experience of the taxpayer. The causal relationship in this instance is left entirely to surmise. Without evidence that the drought caused petitioner's business to be interrupted or diminished, we must deny relief based upon section 722 (b) (1), I. R. C.

Relief is also sought under the provisions of section 722 (b) (4) upon the premise that the petitioner changed the character of its business and the average base period net income does not reflect the normal operation for the entire base period. A change in the character of the business includes a change in the operation of the business and a difference in the capacity for production or operation. It is petitioner's contention that the qualifying factor under this pro-

---

of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry,

\*       \*       \*       \*       \*       \*       \*

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purpose of this subchapter, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation, a difference in the ratio of nonborrowed capital to total capital, and the acquisition before January 1, 1940, of all or part of the assets of a competitor, with the result that the competition of such competitor was eliminated or diminished. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, or any acquisition before May 31, 1941, from a competitor engaged in the dissemination of information through the public press, of substantially all the assets of such competitor employed in such business with the result that competition between the taxpayer and the competitor existing before January 1, 1940, was eliminated, shall be deemed to be a change on December 31, 1939, in the character of the business, or

\*       \*       \*       \*       \*       \*       \*

vision is the petitioner's entrance into the Mexican market in 1939. In the 1920s petitioner had actively engaged in trade in Mexico, but due to a decline in sales, no effort was made to continue this trade between 1933 and 1939. In 1939 it was decided to reenter this market and sales were made in the years following. A few sales were made in Mexico in 1939. The reentry into the Mexican market on a small scale, after a period of inactivity in that area, does not constitute a change in operation or capacity to operate sufficient to justify the relief sought. In *Southland Industries, Inc.*, 17 T. C. 1551, and *East Texas Motor Freight Lines*, 7 T. C. 579, cited by petitioner, the enlargement of the trading area was extensive and the change in operation and capacity was substantial in character. In the present instance, the sale of merchandise to a former salesman in 1939 and the employment of one or two salesmen in 1940 constitute the only change which occurred. Orders had been accepted between 1933 and 1939 but were not actively solicited. The change envisaged by section 722 (b) (4), I. R. C., requires a departure from the general character of petitioner's business. *Stonhard Co.*, 13 T. C. 790. The return to active solicitation of sales in Mexico upon a smaller scale than before did not constitute a change such as is required.

Nor can petitioner successfully contend that it was committed to a course of action prior to 1940 resulting in a change of capacity for production or operation consummated after 1939. The petitioner's decision again to enter the Mexican market and the employment of one or two salesmen did not constitute a commitment to any course of action. The evidence does not sustain the petitioner's contention that it was committed to trade in the Mexican market prior to January 1, 1940. The testimony of petitioner's officers indicates that the Mexican market was considered unstable due to the fluctuation in the value of currency and the sudden change in import duties. In 1939 it was thought that the value of the peso had become reasonably steady and reentry into the market was made on a modest scale. This decision in 1939 and the action taken in that year did not commit the petitioner to any course of action in the Mexican market. Whether due to fear of the instability of the Mexican market or to other reasons, it is evident that nothing was undertaken prior to 1940 that could constitute a commitment with regard to selling in Mexico. We are unable to find a valid basis for relief under the provisions of section 722 (b) (4), I. R. C.

The third basis for the relief sought is a depression in the business of the taxpayer because of the temporary and unusual circumstance of a great decline in the cotton industry, as a qualifying factor under section 722 (b) (2), I. R. C. The initial requirement to be met is a

depression in the taxpayer's business. Petitioner contends that the depression is manifested by the fact that the average of domestic sales of dry goods during the years 1921 through 1939 was $2,920,167, whereas the average of these sales for the base period years 1936 through 1939 was $2,264,291. Gross profits derived from the sale of domestic dry goods during the period 1921 through 1939, petitioner contends, averaged $512,214 and the average base period gross profit for the same items, $442,981. It must also be noted that total sales by the petitioner averaged $3,549,700 during the 19 years from 1921 through 1939. During the base period years total sales averaged $3,159,775. Total gross profit for the entire business averaged $627,447 over the long term and $610,534 during the base period. These figures indicate a decrease in total sales principally caused by the decline in the sale of dry goods. The decrease in dry goods gross profit was the principal factor in the smaller decline in total gross profit.

When examination is made of corporate earnings the pattern is not the same. Net profits of the corporation over the period 1921 through 1939 show an average of $102,306 per year. During the base period, however, this average was exceeded by more than $25,000 with an average of $129,686. The total earnings during the base period aggregated $518,743 which is a greater amount than was earned by the corporation during any other 4-year period between 1921 and 1940 with one exception. Average net earnings during the base period substantially in excess of the long-term average demonstrates that the base period is not an inadequate standard of normal earnings. *Foskett & Bishop Co.*, 16 T. C. 456; *Industrial Yarn Corporation*, 16 T. C. 681. The average corporate net profits shown here would indicate that the base period was not one in which the business carried on by the petitioner corporation was depressed.

Prior to 1933, the petitioner engaged primarily in the wholesale dry goods business. In that year it began to sell automotive parts, radios and other appliances with the purchase of the assets of the Taylor Distributing Company and the Southern Equipment Company. Its sales in these fields were substantial as were the gross profits received upon such sales. The acquisition of these new lines of merchandise was largely accomplished by the investment of capital formerly tied up in the dry goods business. By 1936 the petitioner corporation had established itself in these new fields and maintained its sales and gross profits upon these items at a substantial level throughout the base period. It is apparent that the diversion of capital from the dry goods business to the sale of appliances was the principal means of maintaining the petitioner's average total gross

profit for the base period years at $610,534 in comparison with the long term average of $627,447. The increase in net profits during the base period to an average of $129,686 over the long term average of $102,306 may similarly be attributed, in great measure, to the return on the capital investment in the new lines of merchandise. Whatever loss was sustained by the absence of dry goods sales in Mexico was, to a great extent, overcome by the earnings on the diverted capital. The increase in average net profits during the base period over the long-term average manifests that the petitioner's business was not depressed.

The entry into the sale of appliance merchandise was not a change of character of business either during or immediately prior to the base period. See *Acme Breweries*, 14 T. C. 1034. By 1936 the petitioner was established in this line of endeavor. Petitioner contends, however, that the appliance sales made by it during the base period cannot be used in a comparison of net earnings between that period and the years 1921–1939. It is said by petitioner that like must be compared with like, and that a comparison of net earnings is improper because the average income from appliance sales in the base period more than offset its loss of business in its basic dry goods business.

Section 722 (b) (2), I. R. C., requires the business of the taxpayer to be depressed in the base period. During and prior to the base period the petitioner's business consisted of wholesaling dry goods and appliances. In the determination of whether this business was depressed, we must look at the entire business and not merely one segment of it. The petitioner's business consisted of the sale of many different types of merchandise, and appliances cannot be set apart from the rest. The sales of appliances were made through separate departments of the petitioner's enterprise. We cannot disregard the return on a portion of the capital devoted by the petitioner to its operations before and during the base period. This capital was diverted from the dry goods portion of the business in 1933 after the petitioner discontinued active solicitation of sales in Mexico. The capital was still invested by the petitioner corporation in its wholesale business which had merely been expanded to include new merchandise. We see no reason to exclude from consideration the earnings received on the sale of appliances from a comparison with earnings upon the same capital when it was devoted to the sale of dry goods. It is our conclusion that although the dry goods sales may have been depressed, the capital released from this line of merchandise was devoted to the sale of appliances which prospered sufficiently to prevent any depression in the taxpayer's business. We are of the opinion that petitioner's business as an entity was not depressed during the base period and for this fundamental reason relief cannot be granted under the terms of section 722 (b) (2), I. R. C.

No evidence to sustain a basis for relief under any other provisions of section 722, I. R. C., is found. Petitioner's claim for an unused excess profits credit carry-over from 1940 must be denied in the absence of a constructive average base period net income determined under section 722, I. R. C.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*