OPINION. Turner, Judge: The petitioner, a domestic corporation, was organized prior to January 1, 1940, and under section 712 of the Internal Revenue Code, was privileged to have its excess profits credit computed under whichever of sections 713 or 714 would result in the lesser tax. Admittedly, a computation of the petitioner’s excess profits credit under section 714, on the basis of invested capital, would result in the lesser tax, and it was on that basis that the said credit was computed by the petitioner in filing its returns, and on the same basis that the respondent made his determination. There is no suggestion or contention that, absent the applicability of section 722 of the Code, the excess profits credit should have been computed on the basis of base period net income. It is the claim of the petitioner that it is entitled to the benefits of section 722 of the Internal Revenue Code,[5] in that otherwise its excess profits tax for the years before us was excessive and discriminatory, by reason of the occurrence of events within the meaning of subsections (b) (1) and (2). To bring the case within subsection (b) (1), it is argued that the death of E. W. Eldridge was an event unusual and peculiar in the experience of the petitioner; that it occurred immediately prior to the base period and that, by reason thereof, petitioner’s base period normal output or operation was diminished. With respect to subsection (b) (2), it is claimed that the business of both the petitioner and the handkerchief industry was depressed in the base period by temporary circumstances and events unusual to them, the unusual temporary economic circumstances in the case of the petitioner being its credit difficulties following the death of E. W. Eldridge and in the case of the industry, Japanese competition. Under the statute, a taxpayer is entitled to the benefit of section 722, provided it establishes that its tax, computed without the benefit of that section, “results in an excessive and discriminatory tax,” and by subsection (b), it is provided that the tax computed without the benefit of section 722 “shall be considered to be excessive and discriminatory,” if its actual average base period net income is an inadequate standard of normal earnings because of the happening of certain described events, including those set forth in subsections (b) (1) and (2). It must also prove or establish “what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings,” and the taxpayer’s earnings during the particular excess profits tax period or periods. Inasmuch, however, as the comparison to be made of normal earnings for the base period with the earnings for the excess profits tax period is made through the use or application of the excess profits credit computed on the basis of the “constructive average base period net income,” it actually profits the taxpayer not at all to show events and circumstances, under section 722, whereby the tax computed without the benefit of section 722 “shall be considered to- be excessive and discriminatory,” unless it proves or establishes a “constructive average base period net income” sufficient to produce an excess profits credit greater than that already computed without the benefit of section 722. Whether or not the events upon which the petitioner relies were such as to qualify it for relief under section 722 (b) (1) and (2), we find it unnecessary to decide, since, in our opinion, the petitioner has failed to establish “what would be a fair and just amount representing normal earnings to be used as [its] constructive average base period net income,” or that such “fair and just amount,” if established, would result in an excess profits credit any larger, if as large, than that already allowed under section 714, without the benefit of section 722. For the purpose of showing the “amount representing normal earnings to be used as constructive average base period net income,” under section 722, the petitioner rests its case entirely on the proposition that a comparison of the 1927 to 1933 sales and profits experience of taxpayers covered under “Textiles, not elsewhere classified,” in the Bureau of Internal Revenue’s Statistics of Income, with the 1936 to 1939 experience of such taxpayers, will produce a factor which, when applied to its own sales and profits experience for 1927 to 1933, will reflect what would have been normal sales and profits for the base period, absent the events which it claims bring it within the scope of section 722 (b) (1) and (2). A major difficulty with the proposition stated is that it is supported of record by very little, if anything, more than the statement of the proposition .itself. There is no indication or showing that the grouping under the heading “Textiles, not elsewhere classified” in the Statistics of Income of the Bureau of Internal Revenue was occasioned by any substantial resemblance of the various finished products or the markets or uses therefor. Rather, it appears that the grouping was a “catch-all” for the summing up of the income and facts relating thereto of the producers of a “hodge-podge” of items involving textiles, to greater or lesser degrees, in their composition and manufacture. And, in the main, the information appearing of record as to items in the classification is not by way of proof or evidence, but such as may be gathered by statements of counsel in colloquy between themselves and between them and the Court, and, in a few instances, from recitations of matter preliminary to questions asked a witness, which witness was the petitioner’s accountant, who, rather obviously, was not too well informed in the matter himself. So far as may be determined from the sources outlined above, the products covered by the grouping or classification “Textiles, not elsewhere classified” included such items as cord, hemp, rope, twine; felt goods, but not including felt hats; fur goods, but not including fur-trimmed; leather goods; hospital and surgical supplies, including absorbent sheeting, adhesive tape, antiseptic gauze, elastic surgical supplies, et cetera; linen and flax goods; and other textiles not including clothing, such as artificial leather, artificial textiles, asbestos textiles, awning materials, banners; bedding, representing bedspreads, blankets, comforts, mattresses; bunting, burlap, curled hair, elastic goods, embroidery, flags, hair cloth, handkerchiefs, laces, lacings, oakum, packing, quilted lining, sail cloth, shade cloth, thread, tents, trimmings, veilings, waste, woven belting, yarns; and examining, dyeing, refinishing, rubberizing, sponging, or waterproofing textiles. The category also appeared to include horse blankets, belts, badges, anto tire and seat covers, mattress protectors, slip covers, shower curtains, carpet linings, and textile bags. In the category “Other Apparel” in 1938 and 1939 were such items as gloves and mittens, combinations of cloth and leather, handkerchiefs, suspenders and garters, robes, lounging garments and dressing gowns, raincoats and other waterproof garments, except oiled, clothing, leather and sheeplined, pleating, stitching, tucking, and embroidery, stamped art goods and art needlework, not made in textile mills, miscellaneous apparel not elsewhere classified, housefurnishings, hassocks and cushions. Because of changes in 1938 and 1939 resulting from the appearance in the statistics of items covered under the category “Other Apparel,” the petitioner’s accountant made certain adjustments in the 1938 and 1939 figures to bring them in harmony with the statistics for the prior years. He was unable to state or explain, from the witness stand, what or how far reaching those adjustments were. Without some further showing, we have no way of knowing whether the trend in production, sales, and profits of such items of cord, hemp, rope, twine, asbestos textiles, awning materials, bedspreads, blankets, mattresses, burlap, hair cloth, oakum, sail cloth, shade cloth, tents, woven belting, horse blankets, auto tire and seat covers, shower curtains, carpet linings, suspenders, garters, dressing gowns, raincoats, hassocks, cushions, and many of the other items listed, would give the slightest indication of the trend in the production, sales, and profits in the handkerchief industry, whether the events upon which the petitioner places its reliance for section 722 relief be present or absent. We do not even know whether they are in accord or discord with business trends generally for the periods considered. In short, assuming that the events relied upon by the petitioner were such as would qualify it for relief under section 722, the petitioner has not, in our opinion, shown or established “what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income” for the purpose of computing an excess profits credit other than or in excess of that already computed and determined without the benefit of section 722. It accordingly follows that the respondent must be sustained in his disallowance of the petitioner’s claims herein. Monarch Manufacturing Co., 15 T. C. 442; Trunz, Inc., 15 T. C. 99; Stonhard Co., 13 T. C. 790; Karsten Catering Co., 13 T. C. 645; and Irwin B. Schwabe Co., 12 T. C. 606. ^Reviewed by the Special Division. Decision will be entered for the respondent. SEC. 722. GENERAL RELIEF— CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME. (a) General Rule. — In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section)! results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * * (b) Taxpayers using Average Earnings Method. — The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because— (1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer. (2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry, * * *