OPINION. Harron, Judge: The petitioner claims relief from excess profits tax under the provisions of Code sections 722 (a) and 722 (b) (2), (b) (3) (A),(b) (3) (B),and (b) (5). The claim in this proceeding is for relief from excess profits tax for 1941. The years 1940 and 1942 are also involved because petitioner claims unused constructive excess profits credit carryover and carry-back. Petitioner’s chief contention is that it meets all of the qualifying factors set forth in section 722 (b) (3) (A). Petitioner contends also that it qualifies for relief under subsections (b) (3) (B), (b). (2), and (b) (5). On the basis of the facts found we conclude that petitioner does not meet any of the qualifying requirements of subsections (b) (3) (A), (b) (3) (B), (b) (2),or(b) (5), and is not entitled to use a constructive average base period net income for the purpose of computing its excess profits tax. At the outset, it is concluded that petitioner’s claim for relief under section 722 (b) (5) must be denied because it is not based on “any other factor” than those to which subsections (b) (2), (b) (3) (A), and (b) (3) (B) are specifically directed. Clermont Groves, Inc., 17 T. C. 1616; Gulf Coast Broadcasting Co., 24 T. C. 1094. The petitioner has made computations designed to show a constructive average base period net income. We have not included in tbe findings the facts upon which petitioner relies in making its computations, and we do not give consideration to petitioner’s contentions in support of its computations because of our conclusion that petitioner has not shown that it qualifies for relief under the requirements of section722 (b). We need consider, therefore, only whether the petitioner qualifies for relief under subsections (b) (2), (b) (3) (A), and (b) (3) (B) of section 722. The provisions of section 722 which are involved under the remaining contentions of the petitioner appear in. the margin.[6] Applicable also are various provisions of Regulations 109 and of the Treasury Department’s Bulletin on Section 722, Excess Profits Tax Relief, hereinafter referred to as the Bulletin. The petitioner contends that its business was depressed in the base period. It claims that it meets the requirement in section 722 (b) (2), namely, that the depression was because of the fact that an industry of which it was a member was depressed by reason of temporary economic events unusual in the case of such industry. Petitioner also contends, under section 722 (b) (3), that its business was depressed in the base period by reason of conditions generally prevailing in an industry of which it was a member subjecting petitioner either to (A) a profits cycle differing materially in length and amplitude from the general business cycle, or (B) to sporadic and intermittent periods of high production and profits which periods were inadequately represented in the base period. The petitioner has undertaken to establish that it meets all of the above qualifying factors although petitioner relies in the alternative upon the provisions set forth above of (b) (2), (b) (3) (A), and (b) (3) (B). In attempting to meet the requisites of (b) (2) and (b) (3), the petitioner presented a vast amount of economic data relating to the nationwide construction industry of which it claims it is a member; and, in rebuttal, the respondent presented a substantial amount of economic data relating to the record of profits of all corporations in the United States as well as all corporations carrying on business within petitioner’s sales area. There is in the record before us a great quantity of expert testimony, statistical tables and charts, and exhibits. The record contains a great deal of data which is overlapping and which is pertinent to consideration of the questions arising under both (b) (2) and (b) (3). This is because under both (b) (2) and (b) (3) a taxpayer must establish the identity of an industry of which it is a member as well as that the taxpayer’s business was depressed in the base period. At the outset, it is noted also that the nature of the provisions of subsection (b) (3) (A) necessitates consideration of periods of years other than the base period years. Likewise, determir nation of the question of whether there is depression in the base period requires comparison with prior years; and comparison of cycles involves consideration of facts and factors over a longer period than the base period. Part IV (B) of the Bulletin. Since we are confronted with having to analyze the proof with respect to petitioner’s contentions that it meets various qualifying factors, it is convenient, if not necessary, to consider the evidence, relating to qualifying factors, such as, for example, base period depression, petitioner’s industry, conditions in the industry, and the comparison of cycles, rather than to consider the evidence adduced under each of the subsections of section 722 (b) on which petitioner relies. See Waldorf System, Inc., 21 T. C. 252, 267, 268, 269, 270, where this approach was followed. Industry. The parties are in sharp disagreement over the question involving determination of the industry of which petitioner, is a member. Briefly, petitioner contends that it is either a member of the construction industry (nationwide in scope), or of an industry, wholesalers of plumbing and heating supplies and equipment, which is closely related to and economically dependent upon the construction industry. On brief petitioner states its contentions in the following way: At all times the petitioner was a member of the construction industry, being a member of the sub-division thereof embracing wholesalers of plumbing and heating supplies and equipment; or, in the alternative, petitioner was a member of an industry embracing some or all of the wholesalers of plumbing and heating supplies and equipment, either in the entire United States, or in its general geographic portion thereof, which industry was so closely related tó and dependent economically upon the construction industry that its profit cycle was affected and controlled by the profit or volume cycle, or both, of the construction industry. Petitioner, also argues that, at least, it is— so dependent upon and subject to and controlled by the same economic influences as is the construction industry (using this term in the sense of contractors and others actually doing installation and construction work), that its volume and profits cycle is influenced and controlled by the volume and profits cycle of the construction industry. Respondent contends that petitioner is a member of an industry in the area within which petitioner made sales which is engaged in the wholesale distribution of broadly diversified lines of plumbing and heating equipment and supplies. In advancing this argument, respondent admits that to the extent that petitioner made sales to those éngagéd in actual construction, it was to a limited extent related to the construction industry. Respondent points out that because of the diversity of the line of products which petitioner sells, it appears to fall into several subindustry classifications according to the classifications of industries in both the Census of Manufacturers and the Census of Wholesalers, and that the diversified line of goods sold by petitioner includes materials which are used not only in new construction but also in repairs, replacements, maintenance, plant equipment, and manufacturing processes. The statute does not define industry. In Part I (F) of the Bulletin, the concept of “industry” is discussed as follows: In most general terms an “Industry” comprises a group of business concerns sufficiently homogeneous in nature of production or operation, type of product or service furnished, and type of customers, so as to be subject to roughly the same external economic circumstances affecting tlieir prices, volume and profits. Stated otherwise, an industry will generally consist of all of the producers which compete with each other in selling essentially the same products or services in the same market. * * * Regulations 109, section 30.722-2 (b) (8), states as follows: (8) For the purposes of section 722 and of section 80.722-3 (b) and (e), no exclusive definition of the concept “industry” can be constructed. In general an industry may be said to include a group of enterprises engaged in producing- or marketing the same or similar products or services under analogous conditions which are essentially different from those encountered by other enterprises. The mere similarity of product and marketing methods, however, is not enough of itself to comprehend taxpayers satisfying such conditions within the same industry. Factors such as geographical location, character and location' of markets, availability and character of raw material supply, and other conditions under which operations are carried on must be considered. Regard may be had to trade custom and practice in determining whether a group of enterprises constitutes an industry. In Pabst Air Conditioning Corporation, 14 T. C. 427, 438, we expressed the view tbat these concepts of industry are sound. Under the facts of this case, these concepts do not permit the industry which embraces wholesale distributors of plumbing and heating supplies and equipment to be regarded as the same as the general construction industry or the building and construction industry. Paraphrasing our reasoning in Pabst Air Conditioning Corporation, supra, it seems plain that the construction industry (or the building and construction industry) and the industry of .wholesale distributors of plumbing and heating supplies and equipment do not “compete with each other in selling essentially the same products or services in the same market.” The petitioner has failed to establish that its business was closely associated with the building and construction industry and that the largest part of its sales was used in new construction. Petitioner did not maintain records over a long period of years showing the end uses made of the goods it distributed. Such records as petitioner maintained show that its customers were engaged in various businesses which indicates various end uses of the goods sold by petitioner. Furthermore, petitioner was unable to produce satisfactory statistics about concerns comparable to petitioner in its sales area. The record does not establish that wholesale distributors of plumbing and heating supplies and equipment compete with the entire construction, or building and construction industry, or with the building and construction industry within petitioner’s sales region. The record contains no substantial evidence upon which reliable comparison can be made with petitioner. Petitioner attempted to obtain evidence about the sales data of plumbing and heating wholesalers through the records of a trade association, Central Supply Association, but such factual material as petitioner was able to obtain is limited to the years 1927-1930, and 1934-1939; it is fragmentary; and it relates to concerns which operated outside of petitioner’s sales region in 20 States. Petitioner’s sales area is restricted to the 4 States, Montana, Minnesota, North and South Dakota, and to portions of Wyoming, Michigan, and Wisconsin. Upon the entire record, it is concluded that the industry of which petitioner is a member comprises wholesale distributors of plumbing and heating equipment and supplies who operate in the same region and markets as petitioner operates; i. e., wholesalers of essentially the same products and services as petitioner sells, operating in the same market as petitioner. In determining whether petitioner meets the requirements of subsections (b) (2) and (b) (3) (A) and (B), we shall consider, therefore, the industry of which petitioner is a member as is concluded above. Base Period, Depression. Petitioner’s average net profit during the base period years exceeded its average net profit over the long period 1922-1939. During the base period years, average earnings were $199,913, or 110.7 per cent of $180,560, the 1922-1939 average. The petitioner was well established in its business prior to the base period and was not in a developmental stage during the base period. Cf. Ainsworth Manufacturing Corporation, 23 T. C. 372, 376. It is concluded that petitioner’s business was not depressed during the base period years. Foskett & Bishop Co., 16 T. C. 456, 462; Industrial Yarn Corporation, 16 T. C. 681, 689; Granite Construction Co., 19 T. C. 163, 170-171; A. B. Frank Co., 19 T. C. 174, 181; Pratt & Letchworth Co., 21 T. C. 999, 1005; Edgewater Steel Co., 23 T. C. 613, 626-627. The petitioner contends that its base period earnings were depressed when comparison is made with its average earnings during the period 1918-1933. It is true that petitioner’s average base period earnings were below the 1918-1933 average. However, we have held that the fact that average base period earnings were not as large as the average for a prior period does not necessarily mean that a taxpayer’s business was depressed during the base period. See Toledo Stove & Range Co., 16 T. C. 1125, 1130; Marian Bourbon & Wine Co., 14 T. C. 97, 104. On the basis of the entire record, we are satisfied that the petitioner’s average profit in the period 1922-1939 is a more appropriate standard by which to measure petitioner’s base period earnings for depression than petitioner’s average profit in the period 1918-1933. The period 1918-1933 includes the years 1918,1919, and 1920, which the evidence establishes were years of abnormally high profits due to the influence on the economy of. the first World War. Also, petitioner underwent a substantial change in the nature of its business during the early twenties, when it changed from a debtor corporation using borrowed capital to a creditor corporation lending a substantial portion of its net worth to Crane of Illinois. (See Table 6.) Of equal significance is the fact that average profits during the base period years were lower than the 1918-1933 average not only in petitioner’s case, but also in the case of all corporations in the United States and all corporations in petitioner’s sales area. (See Table 27.) Inasmuch as the base-period years have been determined by Congress to constitute a period of normal profits for general corporate business, the fact that petitioner’s base period earnings,, like those of all corporations, were below the 1918-1933 average does not establish that petitioner’s earnings were depressed during the base period years. Upon the basis of the entire record, we must reject petitioner’s contention that its business was depressed during the base period years. Depression i/n Petitioner's Industry. The petitioner has failed to establish that the industry of which it was a member, wholesalers of plumbing and heating supplies and equipment competing with petitioner in petitioner’s sales area, was depressed during the base period. The petitioner was unable to produce any evidence pertaining to its competitors. Nevertheless, petitioner cannot be excused from its burden of proving a fact essential to its contentions. El Campo Rice Milling Co., 13 T. C. 775, 786, 788. Petitioner also has failed to establish that the construction industry in its sales area, of which it claims to be a member, was depressed during the base period years. The evidence shows that construction activity in petitioner’s sales area was at approximately the same level as, or above, average construction activity in the same area during the period 1922-1939. The F. W. Dodge Corporation and Federal Reserve Board statistics show that the average value of construction contract awards in petitioner’s sales area for the base period years was 101.8 per cent and 99 per cent, respectively, of the 1922-1939 average value of construction contract awards, and that the average volume of construction contract awards in petitioner’s sales area during the base period years was 106.2 per cent and 100.8 per cent,-respectively, of the average volume during the period 1922-1939. It is concluded that petitioner has not established that the industry of which it was a member was depressed during the base period years. Petitioner has also failed to establish that its business was depressed during the base period years. Accordingly, it is held that petitioner fails to qualify for relief under the provisions of section 722 (b) (2). Conditions in Petitioner's Industry. Under section 722 (b) (3), the petitioner must establish that its business was depressed during the base period years by reason of conditions generally prevailing in its industry. It has been pointed out, above, that petitioner has failed to establish that its business was depressed during the base period years. Petitioner has also failed to establish that conditions generally prevailed in its industry which exerted a depressing effect in petitioner’s business. The record before us contains no statistics relating to the business of wholesalers of plumbing and heating supplies and equipment in petitioner’s sales area, and we are unable to determine what conditions prevailed in that industry during the base period years. One of petitioner’s witnesses testified generally that business conditions among plumbing and heating wholesalers in petitioner’s sales area were poor during the base period years because of the lack of construction activity in that area. However, this testimony is in conflict with the evidence relating to construction activity in petitioner’s sales area during the base period years. This evidence, which is discussed above, establishes that construction activity in petitioner’s sales area was not depressed during the base period. On this state of the record, we cannot find that conditions generally prevailed among plumbing and heating wholesalers in petitioner’s sales area, or in the construction .industry in petitioner’s sales area, which might have depressed petitioner’s business during the base period years. It is concluded that petitioner’s business was not depressed during the base period years by reason of conditions generally prevailing in an industry of which it was a member. Variant Profits Oyóle. Cycles can be regarded as including four phases, which may be designated as prosperity, decline, depression (or recession, if slight), and improvement or recovery. Each of these phases changes gradually into the next phase.[7] The meaning of the terms “length” and “amplitude” are not in dispute. For the purposes of this proceeding, we aecept the definitions contained in the Bulletin on Section 722, Part IV (B): The length of the cycle is the period of time between corresponding stages of two successive cycles. The amplitude of the cycle refers to the violence of fluctuation and is measured by the vertical distance between high and low stages. The evidence shows that the pattern of petitioner’s profits during the period 1922 to 1939 was decidedly similar to the pattern of the profits, less tax-exempt income, of all corporations in the United States. The only point of divergence between the two profits patterns occurred in 1926, when general corporate profits fell slightly whereas petitioner’s earnings increased. Apart from 1926, the lengths of the movements and the turning points in both series of earnings data are the same. It is concluded that the movements in petitioner’s profits pattern did not vary materially in length from the movements in the profits pattern of all corporations in the United States. To the extent that the upturns and downswings in both series of profits can be segregated into cyclical patterns, the lengths of the movements in both profits cycles are virtually identical. It is true that the profits pattern for all corporations in the United States experienced a greater amplitude than did petitioner’s profits. However, under the statute, petitioner must prove a material variance in both length and amplitude. Avey Drilling Machine Co., 16 T. C. 1281, 1296. It is concluded that petitioner has failed to establish that its profits cycle varied materially in length and in amplitude from the profits cycle of all corporations in the United States. Petitioner’s profits pattern also is decidedly similar to the profits pattern of all corporations filing returns in the principal part of its sales area, namely, in Minnesota, Montana, North Dakota, and South Dakota. As set forth in the findings, the only difference noted is that in three instances in which both series of profits indices experienced a decline in profits, the duration of decline in petitioner’s profits was 1 year shorter than the period of decline for all corporations in its sales area. However, even in these instances, both series of profits indices reached troughs and entered recovery phases at the same time. Apart from this difference, both series of indices demonstrate the same upward and downward movements. It is concluded that the pattern of petitioner’s profits does not vary materially in length and amplitude from the profits pattern oí corporations in its sales area. The differences noted above between the profits indices of petitioner and of all corporations in its sales area are quite different from those which appeared in Waldorf System, Inc., supra, where the taxpayer was held to have been subject to a variant profits cycle. In that proceeding, the taxpayer’s earnings reached their peak in 1930. Earnings in 1931, although slightly below those of 1930, were well above average and higher than earnings in any other year in the entire period 1923-1939, with the exception of 1930. The taxpayer’s earnings did not fall sharply until 1932, and reached their trough in 1934, with 1935 as the first year of upturn. Thus, the taxpayer demonstrated that both the depression and recovery of its profits lagged 1 or 2 years behind the profits of all corporations. Furthermore, the taxpayer’s earnings did not experience any measure of recovery subsequent to the trough in 1934. Its earnings had reached a temporary high point in 1936, but thereafter fell again to a point where earnings during the period 1937 to 1939 were lower than in the prior low period of 1933 to 1935. Unlike the taxpayer in Waldorf System, Inc., supra, petitioner’s profits did not experience a lag in the timing of its recoveries from downturns, in comparison either with all corporations in the United States, or with the corporations in its sales area. Also, petitioner’s base period profits, measured quantitatively, did not fail to recover from the low period of 1931-1933, as was the case in the Waldorf System case. The record does not support petitioner’s contention that it experienced complete profits cycles, measured trough to trough, in the periods 1918-1933 and 1900-1918. Under petitioner’s contention, the year 1918 would be a trough year in both alleged cycles. Yet, the evidence shows that petitioner’s profits in 1918 were far greater than its average profits during either alleged cycle. Petitioner’s profits in 1918 were 195 per cent of average profits during the period 1918-1933 and 227.8 per cent of average profits during the period 1900-1918. Also, average profits for the 2 years 1919 and 1920 amounted to 292 per cent of the 1918-1933 average, although earnings in these 2 years would have been below the average for 1918-1933 if 1918 was a trough year. Similarly, average profits for the 2 years 1916 and 1917 amounted to 274.4 per cent of the 1900-1918 average, although earnings in these 2 years would have been below the 1900-1918 average if 1918 was a trough year. Petitioner’s contention that it experienced variant profits cycles, measured trough to trough, in the periods 1918-1933 and 1900-1918, must be rejected. It is concluded that petitioner was not subject to a profits cycle which differed materially in length and amplitude from the general business cycle, within the meaning of section 722 (b) (3) (A). It is held that the petitioner fails to qualify for relief under section722 (b) (3) (A). Sporadic Periods of High Profits. The provisions of section 722 (b) (3) (B), relating to “sporadic and intermittent periods of high production and profits,” are intended to apply in the case of a taxpayer experiencing prosperous years at irregular and unpredictable intervals, and having an earnings experience which cannot be segregated into cyclical patterns.[8] It has been pointed out above that petitioner’s earnings experience can be segregated into the same profits cycles as the profits of all corporations in the United States and the profits of all corporations in petitioner’s sales area. It is held that petitioner does not qualify for relief under the provisions of section 722 (b) (3) (B). Under all the facts and circumstances of this case, it is concluded that petitioner’s average base period net income is not an inadequate standard of normal earnings for the petitioner. Reviewed by the Special Division. Decision will be entered for the respondent. SEC. 722. GENERAL RELIEF — CONSTRUCTIVE AVERAGE BASE PERIOD NET , INCOME. . (b) Taxpayers using Average Earnings Method. — The tax computed under this sub-chapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on Income pursuant to section 718, if its average base period net income is an inadequate standard of normal earnings because— ***** • • (2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer, or because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry. (3) the business of the taxpayer was depressed in the base period, by reason of. conditions generally prevailing in .an Industry of which the taxpayer was a member, subjecting such taxpayer to (A) a profits cycle differing materially in length and amplitude from the general business cycle, or (B) sporadic and intermittent periods of high production and profits, and such periods are Inadequately represented in the base period Riggleman and Erisbee, Business Statistics (3d ed., 1951), 332, 334. Regs. 109. Sue. 30.722-3. Determination of Excessive and Discriminatory Tax ; Tax-payee Entitled to Excess Pbopits Cbbdit Based on Income.— (o) Business depression in base period because of variant profits cycle or sporadic and inadequately represented profits periods.— **»**»» (2) Sporadic profits inadequately represented in the base period. — The characteristic distinguishing the type of case described in section 722 (b) (3) (B) from that In section 722 (b) (3) (A) is that In the latter case the taxpayer has an earnings experience which can be segregated into definite cycles, whereas in the former case (the type of case described in this paragraph) no such cyclical segregation can be made. In case the taxpayer is subjected to intermittent periods of high production and profits, the prosperous years of the taxpayer will occur at irregular and unpredictable intervals, and may depend upon fortuitous combinations of advantageous circumstances, as for example the juxtaposition of a good crop and a good market. If the base period of the taxpayer does not Include these prosperous years, its earnings during such period wiU not be an adequate measurement of average normal earnings.